Filed 5/13/25  In re C.W. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.W., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.B. et al.,<br><br>Defendants and Appellants;<br><br>C.W., a Minor,<br><br>Respondent. | E084496<br><br>(Super. Ct. No. RIJ1500558)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge.  Reversed.

Law and Justice Legal Services and Raymond Woo, for Defendants and Appellants.

1

Minh C. Tran, County Counsel Teresa K.B. Beecham and Julie Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

Suzanne Davidson, under appointment by the Court of Appeal, for Respondent, C.W.

I.

INTRODUCTION

M.B. and M.B. (Appellants) appeal the juvenile court's order denying their request for de facto parent status of their former child, C.W. With C.W. joining, Appellants contend the juvenile court improperly denied their request. We agree and reverse.

II.

FACTUAL AND PROCEDURAL BACKGROUND

After about a dozen failed placements, C.W. was placed in Appellants' care in February 2022. Appellants hoped to adopt C.W.

C.W. had serious behavioral issues at school and at home. While in Appellants' care, his behavior improved but persisted.

In December 2023, nearly two years after being in Appellants' care, the Riverside County Department of Social Services (DPSS) met with Appellants to discuss concerns with their care of C.W. DPSS had a number of concerns, including that there had been two substantiated allegations from Community Care Licensing (CCL) in the prior six months, C.W. inconsistently took his psychotropic medication, Appellants improperly stored alcohol in the home, and Appellants struggled with deciding what information was

2

appropriate to share with C.W. DPSS asked Appellants to sign a corrective action plan, but they refused because they disagreed with CCL's allegations and findings.

In response, DPSS asked the juvenile court to remove C.W. from Appellants' care in January 2024. Appellants filed an objection to the removal and also filed a request with the court to be designated as C.W.'s prospective adoptive parents.

Appellants later withdrew both filings, however, because they asked that C.W. be removed from their home on April 5, 2024. C.W. was placed with another foster family on April 16, 2024.

Although Appellants voluntarily relinquished custody of C.W., they remained interested in adopting him in the future. After his removal, however, Appellants initially did not return DPSS's calls to schedule a visit with C.W. When Appellants eventually called back, they did not offer a date for a visit until mid-May 2024, about five weeks after C.W. had been removed from their care.

At a review hearing on April 26, 2024, C.W. told the court that he wanted to live with Appellants, but if he could not do so, he wanted to at least have visits with them and stay in contact with them. C.W.'s counsel stated that C.W. considered Appellants to be his parents and had consistently expressed his desire to live with them. C.W.'s counsel and guardian ad litem therefore requested that Appellants have visits with C.W., although the guardian expressed concern that Appellants were not committed to C.W. given their failure to schedule a visit with him until about five weeks after his removal from their

3

care.  The juvenile court ordered weekly supervised in-person visits and two supervised 10-minute phone calls per week.

In early May 2024, Appellants filed a request for de facto parent status.  DPSS opposed the request, but C.W.'s counsel and guardian ad litem supported it.

The juvenile court denied Appellants' request.  The court explained its reasoning as follows:  "At this time, the [c]ourt is not inclined to grant de facto status.  [C.W.] is no longer with these caretakers and hasn't been with them for a little while now.  And we have extensive documentation as to all the different services he's receiving, the medications are tapering off, all of those things that the de facto parent could potentially have provided.  At this time, we have most of that information, and we are looking to move forward.  [¶]  I'm denying it without prejudice.  If circumstances change, if he's placed with them again, things can change, and we can revisit it.  But at this time, I'm denying the de facto motion."

Appellants timely appealed.

## III.

## DISCUSSION

Appellants argue that the juvenile court abused its discretion by denying their request for de facto parent status. We agree.

1. *Applicable Law and Standard of Review*

"De facto parent status is ordinarily liberally granted on the theory that a court only benefits from having all relevant information on the best interests of the child." (*In re Bryan D.* (2011) 199 Cal.App.4th 127, 141.)

"The concept of de facto parent has been judicially created to recognize limited rights in dependency cases for a person who has been found by the juvenile court to have assumed, on a day-to-day basis, the role of a parent, fulfilling the child's physical and psychological needs. [Citations.] (*In re Leticia S.* (2001) 92 Cal.App.4th 378, 381.) "The de facto parenthood doctrine simply recognizes that persons who have provided a child with daily parental concern, affection, and care over substantial time may develop legitimate interests and perspectives, and may also present a custodial alternative, which should not be ignored in a juvenile dependency proceeding." (*In re Kiesha E.* (1993) 6 Cal.4th 68, 77.)

California Rules of Court, rule 5.502(10) of the California Rules of Court defines a de facto parent as "a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period."

A prior caretaker may still be entitled to de facto parent status, even if the caretaker can no longer care for the child.  (*In re Vincent C.* (1997) 53 Cal.App.4th 1347, 1358.)  A de facto parent has "'procedural rights' in the ongoing dependency proceedings, such as the right to be present at hearings, to be heard and to retain counsel," but the de facto parent does not have " any substantive rights to 'reunification services, . . . custody, [or] continued placement of the child.'"  (*In re Brianna S.* (2021) 60 Cal.App.5th 303, 314, italics omitted; see Cal. Rules of Court, rule 5.534(a).)

When ruling on a de facto parent request, "the court does *not* consider whether the order would be . . . in [the child's] best interests."  (*In re Leticia S.*, *supra*, 92 Cal.App.4th at p. 383, fn. 5, italics added.)  Instead, to determine whether an adult should be granted de facto parent status, courts generally consider "'whether (1) the child is psychologically bonded to the adult; (2) the adult has assumed the role of a parent on a day-to-day basis for a substantial period of time; (3) the adult possesses information about the child unique from other participants in the process; (4) the adult has regularly attended juvenile court hearings; and (5) a future proceeding may result in an order permanently foreclosing any future contact [between the adult and the child.]'"  (*In re Bryan D.*, *supra*, 199 Cal.App.4th at p. 141.)

"The party seeking de facto parent status has the burden of proving, by a preponderance of the evidence, that he or she falls within the statutory definition."  (*In re Jacob E.* (2004) 121 Cal.App.4th 909, 919.)  We review the juvenile court's decision on a

request for de facto parent status for an abuse of discretion. (*In re Leticia S.*, *supra*, 92 Cal.App.4th at p. 381.)

2. *Analysis*

We conclude the juvenile court abused its discretion by denying Appellants' request for de facto parent status. A preponderance of the evidence shows that Appellants qualify as C.W.'s de facto parents.

To begin with, Appellants met the definition of de facto parent in California Rules of Court, rule 5.502(10). The undisputed evidence shows that Appellants took care of all of C.W.'s needs from February 2022 until April 2024—over two years. Appellants therefore "assumed, on a day-to-day basis, the role of parent, fulfilling both [C.W.'s] physical and psychological needs for care and affection," and they "assumed that role for a substantial period." (Cal. Rules of Court, rule 5.502(10).)

Consideration of the five factors courts should consider when ruling on a de facto parent request also support Appellants' request. The undisputed record shows that Appellants assumed the role of parents to C.W. on a day-to-day basis for over two years—his longest of many placements—and met all his needs while doing so. Because of their care for him, C.W. considered Appellants to be his "mom and dad" and wanted to live with them, or at least remain in contact with them. In other words, he was "psychologically bonded" with them. Future proceedings, however, could result in an order permanently foreclosing contact between Appellants and C.W.

7

Given their lengthy and substantive relationship, Appellants had unique insight into C.W.'s needs that no one else could offer. (See *In re Ashley P.* (1998) 62 Cal.App.4th 23, 27 ["As their caretaker, appellant had special information about the children."]; *In re Patricia L.* (1992) 9 Cal.App.4th 61, 68 [relative who cared for minor for three years "undoubtedly possessed unique information that would be helpful to the court"].)

The only factor weighing against Appellants is that it appears they did not attend juvenile court hearings. But they had no right to attend those hearings under Welfare and Institutions Code section 346 and, regardless, their lack of hearing attendance was not a factor in the juvenile court's decision.

Instead, the juvenile court denied Appellants' de facto parent request because (1) C.W. was no longer in Appellants' care and had not been "for a little while" and (2) the court had "most of [the] information" about C.W.'s services and medications. The fact that C.W. was no longer in Appellants' care is "immaterial." *In re Patricia L.*, *supra*, 9 Cal. App. 4th at p. 67.) A prior caretaker, even one who is no longer able to care for the child, may be granted de facto parent status. (*In re Vincent C.*, *supra*, 53 Cal.App.4th 1347, 1358.) And although the court may have had "most of [the] information" about C.W.'s services and medication, the focus is the de facto parent's overall knowledge about the child (their personality, temperament, interests, routines, needs, etc.) and whether that knowledge would be helpful to the court. People like Appellants, "who have provided a child with daily parental concern, affection, and care over substantial time

may develop legitimate interests and perspectives . . . which should not be ignored in a juvenile dependency proceeding." (*In re Kieshia E.* (1993) 6 Cal.4th 68, 77.)

In short, Appellants undisputedly met the definition of de facto parent, and the other factors overwhelmingly weighed in their favor. We, therefore, conclude that the juvenile court abused its discretion when it denied their de facto parent request.

IV.

DISPOSITION

The order denying Appellants' request for de facto parent status is reversed with instructions to enter a new order granting them de facto parent status.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.